# Harter *v.* Whitebread, Appellant.

*Slander—Substance of charge—Variance—Evidence.*

1. In an action for slander the law deals with the substance of the injurious charge, rather than with the form or letter of it. Ordinarily so long as the variance between the language of the statement, and that admitted by the defendant, is not of substance, the defendant cannot be injured.

*Practice, C. P.—Trial—Charge—Exception.*

2. Where a trial judge uses language in his charge relating to testimony which is capable of being misunderstood by the jury, exception should be taken to it at the time. The fact that no special exception was taken at the time serves to indicate that the language was not misunderstood.

*Evidence—Witness—Contradiction of statement.*

3. Where a witness is called for the sole purpose of contradicting a statement imputed to him by the plaintiff in his testimony, he cannot be examined as to his entire conversation with the plaintiff. For this purpose he should be called in chief.

*Slander—Damages—Financial standing of defendant.*

4. Where in an action for slander the plaintiff has made no effort to swell her damages by showing that the defendant was rich, the latter cannot show his financial standing in mitigation of damages.

Argued March 4, 1908. Appeal, No. 29, Jan. T., 1908, by defendant, from judgment of C. P. Luzerne Co., Feb. T., 1903,

No. 149, on verdict for plaintiff in case of Hannah L. Harter v. Albert Whitebread.    Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ.    Affirmed.

Trespass to recover damages for slander.    Before HALSEY, J.

The facts are stated in the opinion of the Superior Court.

When a witness for defendant was on the stand he was asked this question:

"Q. Tell us what the conversation was that you did have with Milton Bittendender?"

Objected to as irrelevant, immaterial and incompetent.

The Court: The purpose of these questions is contradiction, and we have to confine you to the rule.  Objection sustained, the question rejected, exception noted and bill sealed for defendant. [4]

When Abram Whitebread was on the stand the following offer was made:

Defendant proposes to prove by the witness on the stand, the financial standing of the defendant.

Objected to as not matter of defense.  That the plaintiff might have proved it in relation to the question of damages, but that it cannot be proved in mitigation of damages.  Objected to as immaterial, irrelevant and incompetent.

Objection sustained, evidence rejected, exception noted and bill sealed for defendant. [5]

The court charged in part as follows:

[This is an action of trespass brought by Hannah Harter against Albert Whitebread.  It is based upon an allegation of slander.  The plaintiff contends in the statement filed that certain words used by the defendant against her were slanderous.  While on its face, the statement may not indicate absolutely, or as lawyers say per se, that the words were slanderous, it is alleged on the part of the plaintiff that they impute a slander.  They are in Pennsylvania Dutch, and what their translation 's is for you.  (The court here reads the alleged slanderous statement from the declaration.)  What do those words mean?  Their meaning as alleged in the declaration is

as follows: "Did you hear the news?" Abram Whitebread answered, "No." The defendant then said Hannah Harter went to bed with Irving Whitebread and Calvin Eroh.

On their face those words would not be slanderous, but under the rule of law which is known as the doctrine of innuendo, it is alleged by the plaintiff that they were slanderous and that they impute the crime of adultery to this plaintiff.

What are the facts? Hannah Harter and her husband, Sheridan Harter, lived in Hollenback township in the year 1902. This plaintiff, the wife of Sheridan, was a member of the Lutheran church in that township, in the village of Hobbie. Some time in December, 1902, knowledge came to her that certain stories were in circulation which were injurious to her reputation. She said she was told by a lady named Mrs. Harris that these stories were in circulation, and by Mr. Hippensteal. That she went in pursuance of information derived from these two people and others, to Abram Whitebread. It was on the night of Christmas, 1902, between the hours of ten and eleven o'clock, after the close of the Christmas ceremonies at the church. Mr. Whitebread was in bed and through his daughter, I think, he was gotten out and came out into the road where the plaintiff, Mrs. Harter, and her husband were in a buggy. That there at that time he told her, the conversation then being in English, the story that she heard was in circulation. The conversation was in English except as to the exact words which he said he derived from Albert Whitebread. He said that some time in the month of December, about the second, Albert came to his mill, he being a sawyer, called him out, and after talking about one thing and another, finally told him in Pennsylvania Dutch certain words, what they were you must determine, and which are alleged in this declaration, as I have read. Mrs. Harter thereupon on December 27, 1902, went to the place of residence, I think, of Albert Whitebread, this defendant, and asked him about it. He said he did say it, that his mother-in-law, Malvina Whitebread, had seen her in the bed. She testified there was other conversation with reference to an allegation on the part of Albert that this plaintiff had circulated stories derogatory to the reputation of his daughter Delia, I

think, or Della; and this plaintiff thereupon said, "I will sue you," and he said, I think, "Sue and be damned," or "sue, just as you see fit;" that afternoon, as alleged by the plaintiff, the story was told to other people by Albert, in the blacksmith shop. Albert denies he told this in the blacksmith shop. In this connection I will state that anything I say with reference to the testimony is only for the purpose of applying the rules of law applicable to it, and is not a conclusion because it comes from the court. Your determination is conclusive as to the truth of the testimony; the court only gives you the rules of law applicable to it.

The defendant's testimony is substantially that of the plaintiff with the exception that Mr. Abram Whitebread said that at the time of the conversation at the house, there was no Pennsylvania Dutch used at all, that the entire conversation was in English. However, the testimony is that the conversation at the mill, was in Pennsylvania Dutch. The conversation at the house, according to the evidence of the plaintiff here, was in English with the exception of the operative words here charging this slanderous offense. As I said before, the plaintiff says these words were in Pennsylvania Dutch. Abram Whitebread says they were all in English.

Were these words slanderous? That is for your determintion. Slander may be sufficiently defined, as a false and malicious defamation by word of mouth, tending to injure or disgrace the person of whom the words are spoken; words falsely spoken of a person, which impute to a party the commission of some criminal offense, involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. As I said to you before, these words standing alone would not be slanderous, because they would not impute any criminal offense. But then comes the doctrine of innuendo. Where words are of dubious import, the plaintiff may aver their meaning by innuendo, and the truth of the innuendo is for the jury. The plaintiff has alleged here the words used, and applying the doctrine of innuendo to them says that those words mean that the plaintiff committed the crime of adultery with Irving Whitebread and Calvin Eroh.

In this connection there is another question of fact in which there is contrariety between the testimony of the plaintiff and the testimony of the defendant. Abram Whitebread says that Eroh's name was not used at all in any of the conversations, not used in the conversation between him and Albert, not used in the conversation between him and the Harters on the night of Christmas; that the Whitebread boy's name was used.

It is for you to determine whether these words did impute to the plaintiff the crime of adultery.] [1]

Verdict and judgment for plaintiff for $1,225.50. Defendant appealed.

*Errors assigned* were (1) above instruction, quoting it; (2) in presenting to the jury testimony of the plaintiff and her husband respecting her conversation with Abram Whitebread as proof of what the defendant said to the latter; (3) in not presenting to the jury either the theory or evidence of the defense; (4, 5) rulings on evidence, quoting the bill of exceptions.

*D. A. Fell,* with him *E. A. Lynch,* for appellant.

*John M. Garman* with him *James L. Lenahan* and *Miner B. Schnerr,* for appellee.

Opinion by Head, J., February 26, 1909:

This was an action for slander. The plaintiff alleged the utterance, by the defendant, of certain statements, "imputing the crime of adultery on the part of this plaintiff," she being a married woman. The plaintiff testified that having heard of a story, circulating in the community reflecting on her character for chastity, she and her husband began an investigation to ascertain whence the alleged slanderous utterance had come. That after interviewing several persons, including one Abram Whitebread, a relative of the defendant, they had reached the conclusion the defendant was the source of the injurious statement. That they then went to him and charged him with having given circulation to the language contained in the declaration and he

admitted having done so. She then proved by two other witnesses that at different times the defendant, to them or in their presence and hearing, had made public the same story.

The defendant admitted on the stand that he had told a story, in substance like the one charged but differing in some details. It appears that he talked Pennsylvania Dutch. The testimony was all submitted to the jury without very much elaboration by the learned trial court, and we can see no reason for perpetuating it by a detailed reference to it here.

The first assignment complains that the charge was inadequate in that it did not call the attention of the jury to the difference in the language admitted by the defendant and that charged in the statement and testified to by plaintiff and her witnesses; and in assuming that the words charged were admitted or conclusively proven. The court was not asked to specially present to the jury this difference now alleged to be important. It may well be, in the absence of such request, the learned trial judge did not apprehend that, where a woman's reputation for chastity was being attacked, it made much difference whether the locus in quo was described in the language of the declaration or of the defendant; nor that the extent of the injury done to her good name would vary, appreciably, whether the wrong doing imputed involved two men or only one. The law in such a case deals with the substance of the injurious charge rather than with the form or letter of it. Ordinarily so long as the variance is not of substance the defendant cannot be injured.

The court, after briefly sketching, in narrative style the nature of the case and the manner in which the defendant's responsibility was ascertained plainly told the jury: "In this connection I will state that anything I say with reference to the testimony is only for the purpose of applying the rules of law applicable to it and is not a conclusion because it comes from the court. Your determination is conclusive as to the truth of the testimony." Under these circumstances we are unable to see wherein the testimony of the defendant was improperly treated by the court and the first assignment is dismissed.

The second assignment alleges that "the court erred in presenting to the jury testimony of the plaintiff and her husband respecting her conversation with Abram Whitebread as proof of what the defendant said to the latter." The plaintiff and her husband were permitted, without objection, to relate their conversation with the person named in the course of the investigation which led them to the defendant. The court in the charge relates this conversation, as detailed by the plaintiff, as part of her history of the case. "She said . . . . that there at that time he (Abram Whitebread) told her the story she heard was in circulation. He said that Albert (the defendant) came to his mill and . . . . told him in Pennsylvania Dutch certain words, what they were you must determine, and which are alleged in this declaration as I have read." The court, it is to be observed, did not undertake to give to the jury, what in fact had been there told to the plaintiff, to wit, the words charged; but only what "she," the plaintiff, said had been told her, which was substantially the language contained in the statement. Taken in connection with what immediately followed in the charge as to the visit of the plaintiff to the defendant; her accusation of him then and there as the author of the injurious slander, and her testimony as to his admission and refusal to make any reparation, we cannot find any warrant for the assumption that either court or jury misconceived the true relation to the case of the plaintiff's conversation with Abram Whitebread. Had counsel for the defendant so understood the charge when delivered, the attention of the court should have been called to the fact. No special exception taken to the charge indicates that it was then so understood. No such reason appears among the many advanced for a new trial. The second assignment is dismissed.

The third assignment is sufficiently answered by the charge itself and such comments as we have already made on it. Nor can we find any merit in the fourth. The witness was called for the sole purpose of contradicting a statement imputed to him by the plaintiff in her testimony. He was permitted to do so in the manner and form approved by the best practice. If the defendant desired to elicit from him his version of the entire

conversation with the plaintiff, he should have been called in chief.

The learned trial judge, after explaining to the jury the difference between punitive and compensatory damages expressly instructed them that if they found for the plaintiff they should confine themselves to damages that would be compensatory only. The injury sustained by a slandered plaintiff does not wax or wane according to the financial standing of the owner of the tongue that circulates the slander. The plaintiff had made no effort to swell her damages by showing that the defendant was rich; he could not diminish what would be compensation by showing that he could not easily pay. The refusal of the offer which constitutes the fifth assignment was therefore right. The third, fourth and fifth assignments are dismissed.

Judgment affirmed.